# EXHIBIT A

# 1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

4/12/2019
**RECEIVED**

RAMANJEET KAUR, KULWINDER SINGH
UPPAL, and  NEW ENGLAND
DISTRIBUTORS, INC.,

Plaintiffs,

v.

Civ.No. _____ 1981-CV-01054 _____

WORLD BUSINESS LENDERS, LLC, WBO
SPL I, LLC,  AXOS BANK, and ATLANTIS
CAPITAL, LLC,

Defendants.

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### Introductory Statement

1.       Ramanjeet Kaur and Kulwinder Singh Uppal, the plaintiffs here, approached broker Atlantis Capital, LLC because they needed money for Uppal's business: New England Distributors, Inc.  They were presented with a transaction in which a business loan for New England Distributors, Inc. was backed by Kaur's personal guaranty, and a mortgage on Kaur's family home as collateral for this business loan.  The business loan itself was a short term high interest (92% APR) loan requiring daily payments.

2.       This case stands at the intersection of two dangerous trends in the marketing of financial products: (1) placing a home at risk by issuing a financial product doomed to fail; and (2) "rent-a-bank" or "rent-a-charter" schemes in which the identity of the true lender is obscured, and a loan placed in the name of a federally chartered bank, as a dodge around state usury laws or other state law requirements.

3.     First, since the subprime mortgage crisis fifteen years ago, courts have been dealing with the fallout of mortgages on homes backing loans that were inadequately underwritten and doomed to fail.  Regulations have been adopted to protect residential mortgagors, but those regulations can be avoiding by where a loan is designated a business loan.  But framing the loan as a "business loan" cannot exempt these lenders from the scope of Chapter 93A.  It is an unfair and deceptive practice to offer Massachusetts residents such as the plaintiffs the opportunity to get capital to build their businesses if the loans have an unreasonable risk of failure.  It is an unfair and deceptive practice to ask Massachusetts residents to put up their homes as collateral for a financial product that the lenders have not adequately underwritten.  Mass. Gen. Laws c. 93A, sec. 2(a) makes it unlawful to engage in any unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce in the Commonwealth.  Loans that are doomed to fail violate Chapter 93A.  Loans with inadequate underwriting violate Chapter 93A.  These principles continue to apply when the borrower is a small business whose owner backs the loan with a mortgage on her home.

4.     The second trend is what courts around the country have begun to address "rent-a-bank" or "rent-a-charter" schemes in which the identity of the true lender is obscured, and a loan placed in the name of a federally chartered bank, as a dodge around state usury laws or other state law requirements.  The loan here, on its face, is a business loan, requiring substantial daily payments that the documents acknowledged to be equivalent to 92% APR, backed by a personal guaranty and a mortgage on real estate.  Transactions of this structure have been a proprietary part of the business of World Business Lenders, LLC – an alternative finance company that provides short term high interest loans backed by personal guarantees and using real estate as collateral – since its inception.  All the forms used for this transaction are demonstrably World

22644274v.1

Business Lender forms.  But although plaintiffs were presented with this loan by World Business Lenders, the transaction documents all attempt to position BOFI[1] as the lender.  BOFI is a federal bank organized under the laws of Nevada – a state that has no usury laws.  Structuring a loan in the name of a federal bank based out of Nevada is a common scheme that alternative lenders use to take advantage of the legal exemptions for federally chartered banks that otherwise would not be applicable to the alternative lender.  Such a scheme is referred to as a "rent-a-bank" or "rent-a-charter" scheme because the alternative finance company is the true lender while the bank receives a fee for the use of its name and charter, but bears no real risk.

     5.     Plaintiffs seek damages for violations of the Massachusetts Usury Statute (Mass. Gen. Laws ch. 271, sec. 49) and Chapter 93A, and related claims arising out of the transaction.

## PARTIES

     6.     Ramanjeet Kaur is a Massachusetts resident with an address at 9-11 Upland Park, Somerville, Massachusetts.

     7.     Kulwinder Singh Uppal is a Massachusetts resident with an address at 9-11 Upland Park, Somerville, Massachusetts.  Uppal is plaintiff Ramanjeet Kaur's husband, and the owner of New England Distributors, Inc.

     8.     New England Distributors, Inc., is a Massachusetts corporation with its principal place of business located at 12 Linscott Road, Unit F, Woburn, MA 01801.

     9.     World Business Lenders, LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 101 Hudson Street, 33rd Floor, Jersey City, NJ, 07302.

---

[1] The former name of defendant Axos Bank.

10.     WBO SPL I, LLC is a wholly owned subsidiary of World Business Lenders, LLC.

11.     Axos Bank ("BOFI") is an FDIC insured institution organized and existing under the laws of Nevada, with an address of 9205 West Russell Road, Suite 400, Las Vegas, NV 89148.

12.     Axos Bank was formerly known as BOFI Federal Bank.

13.     Atlantis Capital, LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 111 John St., Suite #540, New York, NY, 10038.

## JURISDICTION AND VENUE

14.     World Business Lenders, LLC does business throughout the United States, including in Massachusetts.

15.     World Business Lenders, LLC's subsidiary WBO SPL I, LLC does business throughout the United States, including in Massachusetts.

16.     BOFI does business throughout the United States, including in Massachusetts.

17.     Atlantic Capital, LLC does business throughout the United States, including in Massachusetts. Atlantis Capital's website advertises "Funding available in all USA States & Canada."

18.     Defendants have engaged in tortious conduct in Massachusetts.

19.     Venue in Middlesex County is proper because the case involves the right to real property located at 9-11 Upland Park in Somerville, Massachusetts, and thus venue is proper in Middlesex County.

20.     Venue in Middlesex County is also proper because Plaintiffs entered into this transaction in Middlesex County.

-4-

22644274v.1

21.     Venue in Middlesex County is also proper because Plaintiffs are Middlesex County residents.

**The March 2018 Loan and Transaction**

22.     Mr. Uppal needed additional capital to grow his business, New England Distributors, Inc.

23.     In February and March 2018, Ms. Kaur and Mr. Uppal corresponded with broker Atlantis Capital, LLC.

24.     The front page of Atlantis Capital's website says "Bad credit? We accept Bad Credit."



25.     The only financial information the broker gathered from Ms. Kaur and Mr. Uppal were the last four months of business bank statements, the last four months of merchant processing statements, and outstanding business debt of New England Distributors, Inc.

26.     The broker also required them to fill out a document entitled "Uniform Residential Loan Application."

27.     Ms. Kaur was confused by the "Uniform Residential Loan Application," and wrote to the broker:

-5-

> Hello Alan it's Ramanjeet kulwinder' S wife I want to make sure is
> this loan on Bussiness or that's on property Because kulwinder told
> me they just need this property as a guarantor but nothing going on
> my name or property loan is on New England name please make
> first what kind of loan is that                    [sic]

28.     The broker responded:

> Your husband is absolutely right.This is a business loan going to
> New England Distributor.But lender is taking your house as
> collateral for guarantee.Daily payback amonut will be deducted
> from New England's account also.            [sic]

29.     The broker introduced Ms. Kaur and Mr. Uppal to World Business Lenders,

which agreed to provide financing for New England Distributors.

30.     For its underwriting process, World Business Lenders required six months of

bank statements from New England Distributors, and a brief Merchant Interview over a video

communication program (e.g., Skype or Facetime).

31.     While Ms. Kaur and Mr. Uppal were told that World Business Lenders could

request additional documents during the underwriting process, no additional documents relating

to the New England Distributors financials were requested.

32.     On information and belief, the broker was aware of the extent of World Business

Lender's underwriting process.

33.     On information and belief, the broker was aware of the terms of the World

Business Lenders transaction that was presented to Ms. Kaur and Mr. Uppal, which included an

APR in excess of 92%.

34.     On March 13, 2018, Ms. Kaur and Mr. Uppal each submitted a Business Loan

Application that contained the letterhead of both World Business Lenders, LLC and BOFI (the

"Business Loan Application").

35.     The electronic form used by the Business Loan Application was equipped with DocuSign technology to capture plaintiffs' electronic signatures.

36.     On the Business Loan Application, Plaintiffs left many of the questions blank, including whether the company had employees and whether the business location was owned or rented.

37.     The Business Loan Application stated "Depending upon various factors, loans will be made by either World Business Lenders ("WBL") or BofI Federal Bank ("BofI"), Member FDIC."

38.     Nonetheless, other disclosures made clear that WBL, and not BofI, would do the groundwork: "I will promptly notify WBL of any material changes…" and "WBL may order a valuation to determine the value of property proposed as collateral…".

39.     After submitting the Business Loan Application on March 13, 2018, Plaintiffs received a "Conditional Closing Agreement" the same day, which Ramanjeet Kaur also signed through DocuSign on behalf of New England Distributors, Inc.

40.     On March 14, 2018, Plaintiffs were sent a loan ("the Loan"), backed by a personal guaranty ("the Guaranty"), and secured by a mortgage the home that Ms. Kaur shares with Mr. Uppal at 9-11 Upland Park, Somerville, MA (the "Mortgage"). (Collectively, the "Transaction").

41.     The "Business Loan Summary" that accompanied the Loan represented the Lender to be "BofI Federal Bank" 9205 West Russell Road, Suite 400, Las Vegas, NV 89148.

42.     On information and belief, the true lender was World Business Lenders.

43.     The Business Loan Summary indicated that a Loan Amount of $175,000, a daily Interest Rate of .250136986301%, and an APR of 92.5687%.

22644274v.1

44.     The Business Loan Summary set forth a payment schedule that 188 payments of $1,277.82 would be due each business day between 3/19/2018 and 12/13/2018.

45.     The total repayment required under the Loan was $241,506.95, meaning that plaintiffs would pay an interest charge of $66,506.95 on a $175,000 loan held for just under nine months.

46.     Kaur signed Business Loan Summary and the Loan on behalf of New England Distributors Inc.

47.     Kaur signed the Guaranty.

48.     Kaur and Uppal signed the Mortgage on their home, 9-11 Upland Park in Somerville, Massachusetts.

49.     Neither Kaur nor Uppal had the ability to negotiate the terms of the Transaction.

50.     Neither Kaur nor Uppal nor New England Distributors Inc. were represented by counsel in the Transaction.

51.     On March 16, 2018, a bank account held in the name of New England Distributors, Inc. received an electronic deposit of $172,237.50.

52.     The description of the electronic deposit says "CCD DEPOSIT, BOFI FEDERAL BAN EPAY0001" followed by the loan number.

53.     The broker, Atlantis Capital, charged $5,245 for having brokered the transaction.

54.     On March 19, 2018, electronic withdrawals out of the account began in the amount of $1,277.82.

55.     The first $1,277.82 electronic withdrawal, on March 19, 2018, is accompanied by a description that reads: "CCD DEBIT, BOFI AUTOPAY" followed by the loan number.

56.    The next two $1,277.82 electronic withdrawals, both on March 21, 2018, are accompanied by a description that reads "CCD DEBIT, WBL FBO BANK OF AUTOPAY" followed by the loan number.

57.    The next $1,277.82 electronic withdrawal, on March 22, 2018, is accompanied by a description that reads: "CCD DEBIT, WORLD BUSINESS A AUTOPAY" followed by the loan number.

58.    The next $1,277.82 electronic withdrawal, on March 23, 2018, is accompanied by a description that reads: "CCD DEBIT, WBLSPO1LLC AUTOPAY" followed by the loan number.    Further $1,277.82 electronic withdrawals continued with that description.

59.    On March 30, 2018, the Mortgage was recorded at Middlesex South Registry of Deeds, at Book 70801, Page 383.

**Evidence that WBL is the True Lender**

60.    The business history of BOFI and WBL and the products they offer now and have offered historically show that the Loan here came from WBL and not from BOFI.

*BOFI Business History*

61.    On information and belief, defendant Axos Bank was founded in 1999 under the name "Bank of Internet USA" and changed its name to "BofI Federal Bank" in 2011.

62.    BofI rebranded itself as Axos Bank on October 1, 2018.

63.    The Axos Bank website contains three headings: Personal, Business, and Partners. If the the "Business" category is selected, the website displays three sub-headings: Small Business Banking, Commercial Banking, and Commercial Lending.



64.     The "Small Business Banking" and the "Commercial Banking" subsections of the website contain no loan products.

65.     The first column under the Commercial Lending subsection contains three products types: Commercial Lines of Credit; Commercial Term Loans; Equipment Finance; and Factoring.

66.     The second column under the Commercial Lending subsection contains five product types: Commercial Real Estate Specialty Bridge and Construction Lending; Lender Financing; Residential; Warehouse Lending; and Small Balance Commercial Real Estate.

67.     The Commercial Lines of Credit page advertises line size starting at $250,000.

68.     The Commercial Term Loans page advertised loan size of $250,000 to $5MM.

69.     The Commercial Term Loans page advertised "3, 5, and 7 year fixed-rate commercial loans" with "fixed monthly payments."

70.     The 3/16/18 Loan was for $175,000.

71.     The 3/16/18 Loan was to be paid in full by December 14, 2018.

72.     The 3/16/18 Loan does not fall within the set of products described the Bank web page (as observed March 2019).

73.     On information and belief, the 3/16/18 Loan did not fall within the set of products described by the Bank web page in March 2018.

*Business History of World Business Lenders:*

74.     On information and belief, World Business Lenders was founded in 2011.

75.     On information and belief, World Business Lenders did not act as a loan servicer in 2011.

76.     On information and belief, World Business Lenders was exclusively a direct lender when it began in 2011.

77.     In May 2017, World Business Lenders' sales manager David Rabouin stated, regarding World Business Lenders, "We're an asset based lender." and "All of our loans are secured with real estate."

78.     On information and belief, World Business Lenders continues to be a direct lender.

79.     Below is a screen capture of a portion of the World Business Lenders Website discussing loan options:

22644274v.1



**World Business Lenders**

Home   News   Why WBL   Small Business Loans   Referral Program   About Us
Careers   Contact

## Loan Options - Use Your Personal Assets As Business Collateral

- $5,000 minimum
- $2,000,000 maximum
- $150,000 average loan size
- 6-month minimum term
- 36-month maximum term
- Daily or weekly payments
- 6-months minimum business history

Thank you for selecting World Business Lenders for your business needs. Fill out the form below and a loan specialist will contact you shortly.

First Name*          Last Name*

80.     The World Business Lenders website advertises terms between 6 months and 36 months, with daily or weekly payments.

81.     Daily payments were a feature of the 3/16/18 Loan at issue in this case.

82.     The transaction at issue was structured to require a $1,277.82 daily payment from New England Distributors, Inc., not including penalties or fees.

83.     The World Business Lenders website advertises the use of personal assets as business collateral.

84.     The use of personal assets as business collateral is a feature of the 3/16/18 Loan at issue in this case.

85.     The transaction at issue was structured to include a mortgage on Kaur and Singh Uppal's home as collateral for the business loan to New England Distributors, Inc.

86.     On information and belief, World Business Lenders specializes in the product at issue in this case – a business loan backed by a personal guaranty and a mortgage on real estate.

87.     In May 2018, World Business Lenders announced a $30MM multi-draw credit facility from a Cayman Islands fund established by a consortium of Asian banks and investors.

-12-

88.     In connection with that announcement, Robert Pardes, Chief Operating Officer of World Business Lenders stated that "this reaffirms increasingly broad institutional acceptance of our proprietary product and market leading servicing platform."

89.     In connection with the same announcement, Matthew Yoon (Managing Director and Head of Asia at Pi Capital International LLC, which advised World Business Lenders with respect to the $30MM facility) said, "This transaction demonstrates desirability, even with cross-border investors of WBL's well-structured proprietary business loan product.  WBL's veteran management and underwriting team has created an exciting new secured asset class for investors."

90.     On information and belief, the March 16, 2018 Loan is an example of the "proprietary product" Pardes and Yoon were describing.

91.     World Business Lenders business includes making loans in excess of the usury rate in Massachusetts, which G. L. c. 271, sec. 49 sets at 20%.

92.     On August 15, 2017, World Business Lenders, LLC send a "Notification Pursuant to Mass. Gen. Laws ch. 271, sec. 49(d)" to the Commonwealth of Massachusetts Attorney General's Office.

93.     In that notification, World Business Lenders notified the Attorney General of "its intent to engage in transactions which, but for the provisions of Mass. Gen. Laws ch. 271, sec. 49(d) would be proscribed under the provisions of Mass. Gen. Laws ch. 271, sec. 49(a)."

94.     The "Business Promissory Note and Security Agreement" signed by Ms. Kaur on behalf of New England Distributors Inc. is a form created by WBL.

95.     WBL has been using earlier versions of the same "Business Promissory Note and Security Agreement" since at least as far back as 2014.

-13-

### *World Business Lenders Previous Scheme with Liberty Bank*

96.    World Business Lenders tried this scheme before, using Liberty Bank, Inc. (a

Utah bank) instead of BOFI as the bank to hide behind.

97.    A complaint for RICO violations was filed in May 2017 in the Southern District

of New York.

98.    Attached to that Southern District of New York complaint is a Business Loan

Application:



99.    Plaintiffs here also completed a form entitled Business Loan Application:

100.    The Business Loan Application from the Southern District of New York complaint and the Business Loan Application a plaintiffs submitted appear to be created from an updated version of the same form.

101.    One difference between the forms is that the Liberty Bank logo has been replaced with the BOFI logo.

102.    A second difference between the forms is that the Certification and Agreement contains some different language.  There is enough identical language in the Certification and

Agreement section to allow one to conclude that this is an updated version of the same

paragraph, and not independently drafted.

103.    There are no other differences between the forms.

104.    Attached to that Southern District of New York complaint is also a Business Loan

Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits):



105.    Plaintiffs here also completed a form entitled a Business Loan Authorization

Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits):

DocuSign Envelope ID: 3BB4FBF5-BC51-44AC-9E5F-F4ACC7D3BEB4

**BOFI**
FINANCIAL

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.n

**BUSINESS LOAN AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

Date: 03-12-2018

**DISBURSEMENT OF BUSINESS LOAN PROCEEDS.** By signing below, Borrower authorizes Lender to disburse the business loan proceeds, as evidenced by the Business Promissory Note and Security Agreement executed by Borrower of even date herewith, less the amount of any applicable fees, (a) by issuing (i) a check or bank wire to Borrower's checking account indicated below (or a substitute checking account Borrower later identifies and is acceptable to Lender) (herein this referred to as the "Designated Checking Account") or (b) by initiating an ACH credit entry to the Designated Checking Account. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** Enrollment in Lender's Automatic Payment Plan is required for approval of the business loan. By signing below, Borrower agrees to enroll in the Automatic Payment Plan and authorizes Lender to collect payments required under the terms of the Business Promissory Note and Security Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the Payment Schedule set forth in the Business Promissory Note and Security Agreement. Borrower authorizes Lender to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the Payment Schedule and any unpaid charges. This authorization is to remain in full force and effect until the loan is paid in full or until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it. Lender may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's Designated Checking Account in good standing or if there are insufficient funds in Borrower's Designated Checking Account to process any payment. If Borrower terminates this authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment method prescribed by Lender.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Borrower attests that the Designated Checking Account was established by Borrower, and the loan proceeds will be used for business purposes only and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

**ACCOUNT CHANGES.** Borrower agrees to notify Lender promptly if there are any changes to the Designated Checking Account, including routing numbers.

**MISCELLANEOUS.** Lender is not responsible for any taxes charged by Borrower's depository bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH transactions to Borrower's Designated Checking Account must comply with the provisions of U.S. law.

Depository Bank Name: TD BANK
Branch: Woburn, MA
Branch Address: 260 Montvale Ave, Woburn, MA 01801
Account Name: New England
Account #: ▮▮▮▮▮▮
Routing #: ▮▮▮▮▮▮
Customer Federal Tax ID (EIN): ▮▮▮▮▮▮

BORROWER: New England Distributors, Inc

Signature: _____   Name/Title: Ramanjeet Kaur Dhamer

Date: 3/14/2018

---

106.   The two documents are created from identical forms, except insofar as the Liberty Bank logo has been replaced with the BOFI logo.

107.   These forms are part of the loan origination process.

108.   On information and belief, these forms are identical because these forms come from WBL.

109.   BOFI had no involvement with the loan at issue in the Southern District of New York complaint.

110.   Liberty Bank had no involvement with the Loan here.

-17-

22644274v.1

111.    On information and belief, WBL forms are used in the loan origination process because WBL is the true lender.

**World Business Lender's Previous Scheme With Bank of Lake Mills**

112.    World Business Lenders also employed this scheme before using Bank of Lake Mills (a Wisconsin bank) instead of BOFI as the bank to hide behind.

113.    Documents attached to a 2017 complaint filed in the Middle District of Florida appear to have been created from the same forms used to create the Loan documents and the related transaction documents here.

114.    Attached to the Middle District of Florida complaint was this Business Loan Summary:



115.    Plaintiffs here also signed a form entitled Business Loan Summary:

22644274v.1

116.    The  Business Loan Summary Ms. Kaur signed in 2018 appear to be created from an updated version of the same form that created the Business Loan Summary from the Central District of Florida complaint.

117.    One difference between the forms is the addition of the BOFI logo (E-Filing information on the document from the Central District of Florida complaint obscures whether the Bank of Lake Mills logo appears in the same place).

118.    A second difference between the forms is that the Business Loan Summary Ms. Kaur signed in 2018 shows daily interest rate and APR; the document from the Central District of Florida complaint did not.

-19-

119.    A third difference between the forms is that the 2018 version contains certain updates: an additional sentence at the end of the Payment Schedule paragraph, two additional sentences regarding the cost of the loan, and formatting change to the signature line.

120.    Notwithstanding the differences in language, there is enough identical formatting and language in the Business Loan Summary to allow one to conclude that the Business Loan Summary Ms. Kaur signed in 2018 is an updated version of the Business Loan Summary attached to the Central District of Florida complaint, and not independently drafted.

121.    Indeed, the Business Loan Summary Ms. Kaur signed in 2018 contains the words "Revision Date: February 2018" at the bottom of the document.

122.    The Business Loan Summary attached to the Central District of Florida complaint contains the words "*Rev. Sep 2014*" at the bottom of the document.

123.    The Business Loan Summary form is part of the loan origination process.

124.    On information and belief, these two Business Loan Summary forms are substantially the same because these forms come from WBL.

125.    BOFI had no involvement with the loan at issue in the Central District of Florida complaint.

126.    Bank of Lake Mills had no involvement with the Loan here.

127.    On information and belief, WBL forms are used in the loan origination process because WBL is the true lender.

**Contract of Adhesion**

128.    The forms underlying the transaction all came from WBL and WBL only:  not from any bank listed as lender, and certainly not from plaintiffs.

129.    Plaintiffs had no opportunity to negotiate any terms.

-20-

130.    The contract is deceptive on its face because it misrepresents the party in interest, stating that the BOFI is the lender when WBL is the true lender.

131.    Because this was a contract of adhesion and because this contract misrepresented the identity of the lender, the choice of law clause and the arbitration clause cannot be enforced.

**Pre-Foreclosure Maneuvering**

132.    On October 1, 2018, an Assignment of Mortgage was filed at the Middlesex South Registry of Deeds at Book 71689, Page 176.

133.    Pursuant to that document, the Mortgage on 9-11 Upland Park, Somerville, MA 02145 was assigned from BOFI Federal Bank to World Business Lenders, LLC.

134.    On that document, the "Original Beneficiary" is listed as "World Business Lenders, LLC."

135.    The document was signed by World Business Lenders, LLC, as Attorney-in-Fact for BOFI Federal Bank.

136.    Also on October 1, 2018, a Springfield, Massachusetts law firm sent a "Notice of Default and Intent to Foreclose" to New England Distributors, Inc.

## Damages

137.    As a direct and proximate result of the 3/16/18 Loan and Transaction, Plaintiffs have incurred damages, including but not limited to illegal interest payments, bank fees, attorneys fees, and consequential damages.

## Count I: Injunctive Relief

138.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

-21-

139.    Plaintiffs seek a permanent injunction precluding Defendants World Business

Lenders and WBO SPL I, LLC from foreclosing on the property at 9-11 Upland Park,

Somerville, MA.

### Count II: Chapter 93A (Doomed to Fail)

140.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs

as if fully set forth herein.

141.    Mass. Gen. Laws c. 93A, sec. 2(a) makes it unlawful to engage in any unfair

methods of competition and unfair and deceptive acts or practices in the conduct of any trade or

commerce in the Commonwealth

142.    The financial product here was a business loan with an acknowledged 92% APR.

143.    The defendants required the plaintiffs to connect this 92% APR Loan for a

business to a personal guaranty by Kaur.

144.    The defendants required the plaintiffs to connect this 92% APR Loan for a

business to a mortgage on the residence owned by Kaur and Uppal.

145.    Both Massachusetts law and federal law would prohibit 92% APR for residential

mortgage loans.

146.    Because this loan is termed a "business" loan it falls outside the regulatory

protections for residential mortgage loans.

147.    Nonetheless, this loan is still subject to Chapter 93A.

148.    A transaction falls afoul of Chapter 93A if it is unfair and deceptive,

notwithstanding the fact that it may fall within a regulatory loophole.

149.    Massachusetts courts have not defined the limits of what constitutes an unfair or

deceptive act because there are no limits to human inventiveness in this field.

22644274v.1

150.    Massachusetts courts have determined that loan products are unfair and deceptive if they are doomed to fail.

151.    One measurement of whether a loan is doomed to fail is the sufficiency of its underwriting.

152.    Here, World Business Lenders expressly advertised to borrowers with low credit scores.

153.    Here, World Business Lenders expressly advertised that they would look only at a limited set of bank statements and not at a business's overall finances.

154.    These questionable underwriting practices were acceptable business risks to World Business Lenders because the loans were secured by real property, even residential property.

155.    The 3/16/18 Transaction violates Chapter 93A.

### Count III: Chapter 93A (Rent-a-Bank)

156.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

157.    Mass. Gen. Laws c. 93A, sec. 2(a) makes it unlawful to engage in any unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce in the Commonwealth

158.    The financial product here purports on its face to have been issued by BOFI Federal Bank.

159.    This financial product is advertised by World Business Lenders LLC.

160.    This financial product is the same model referred to by World Business Lenders and its representatives as a proprietary.

161.   World Business Lenders is the true lender in the 3/16/18 Transaction.

162.   The 3/16/18 Transaction violates Chapter 93A.

### Count IV: Usury

163.   Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

164.   World Business Lenders is the true lender in the March 16, 2018 Transaction, notwithstanding that the Transaction purports to be in the name of BOFI Federal Bank.

165.   World Business Lenders is subject to G. L. c. 271, sec. 49, which caps the legal interest rate in Massachusetts at 20%.

166.   World Business Lenders is generally exempt from G. L. c. 271, sec. 49 because it notified the Attorney General pursuant to G. L. c. 271, sec. 49(d) of its intent to exceed the 20% rate.

167.   World Business Lenders is not exempt from G. L. c. 271, sec. 49 with respect to this transaction because its participation in the transaction was not accurately disclosed on the fact of the Loan documents.

168.   The exemption in G. L. c. 271, sec. 49(d) is contingent upon the lender maintaining records of each transaction.

169.   Here, the records of the transaction falsely indicated that BOFI Federal Bank was the lender.

170.   Because the lender was identified falsely, this is not compliant record under G. L. c. 271, sec. 49(d) and World Business Lenders is not entitled to the safe harbor afforded by that subsection.

171.   The loan indicates on its face that it is 92% APR.

172.    World Business Lenders is liable for usury.

## Count V: Aiding Usury

173.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

174.    Insofar as World Business Lenders is liable for usury, Axos Bank and Atlantis Capital, LLC are liable for aiding this usury.

## Count VI: Chapter 93A (Usury)

175.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs as if fully set forth herein.

176.    Insofar as World Business Lenders is liable for usury, and insofar as Axos Bank and Atlantis Capital, LLC are liable for aiding this usury, these three defendants are liable under Chapter 93A because usury is a per se violation of Chapter 93A.

WHEREFORE, Plaintiffs demand judgment in their favor against all Defendants, jointly and severally, and seek an order from the Court:

a) Granting an injunction against Defendants retaining them from enforcing any of their rights under the 3/16/18 Transaction, including the Loan, the Guaranty, and the Mortgage;

b) Ordering Defendants to repay Plaintiffs all principal and interest and related fees previously paid by Plaintiffs to Defendants in connection with the criminally usurious loan, including prejudgment interest;

c) Awarding Plaintiffs, threefold, their direct and consequential damages, including prejudgment interest, in an amount to be determined at trial;

d) Awarding punitive damages;

e) Awarding Plaintiffs attorneys' fees and costs incurred in this action;

f) Granting such other and further relief as this Court deems just and proper.

22644274v.1

Dated:  April 12, 2019

RAMANJEET KAUR, KULWINDER SINGH
UPPAL, and  NEW ENGLAND  DISTRIBUTORS,
INC.,

By their attorneys,

Shane R. Heskin
BBO # 665098
Rachel J. Eisenhaure
BBO # 663876
WHITE AND WILLIAMS LLP
101 Arch Street, Suite 1930
Boston, MA  02110
Tel.:  617.748.5200
heskins@whiteandwilliams.com
eisenhaurer@whiteandwilliams.com

22644274v.1

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>1981CV01054 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): Ramanjeet Kaur, Kulwinder Singh Uppal, and New England Distributors, | COUNTY |
|---|---|
| ADDRESS: Ramanjeet Kaur, 9-11 Upland Park, Somerville, MA; | **Middlesex** |
| Kulwinder Singh Uppal, 9-11 Upland Park, Somerville, MA | DEFENDANT(S): World Business Lenders, LLC, WBO SPL I, LLC, and AXOS Bank |
| New England Distributors, 12 Linscott Rd., Unit F, Wobum, MA 01801 | |
| ATTORNEY: Rachel J. Eisenhaure, Esq. | |
| ADDRESS: White and Williams LLP | ADDRESS: |
| 101 Arch St., Suite 1930, Boston, MA 02110 | World Business Lenders, LLC, 101 Hudson Street, 33rd Fl., Jersey City, NJ 07302 |
| 617-748-5200 | WBO SPL I, LLC, 101 Hudson Street, 33rd Fl., Jersey City, NJ 07302 |
| BBO: 663876 | Axos Bank, 9205 West Russell Road, Suite 400, Las Vegas, NV 89148 |

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BE1 | Usury, Chapter 93A | A | [x] YES  [ ] NO |

*If "Other" please describe:

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................. $ _____
2. Total doctor expenses ............................................................... $ _____
3. Total chiropractic expenses ....................................................... $ _____
4. Total physical therapy expenses ................................................ $ _____
5. Total other expenses (describe below) .......................  Subtotal (A): $ _____

B. Documented lost wages and compensation to date ........................ $ _____
C. Documented property damages to dated ...................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ........ $ _____
E. Reasonably anticipated lost wages .............................................. $ _____
F. Other documented items of damages (describe below) ................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
All principal and interest and related fees previously paid by Plaintiffs to Defendants in connection with the criminally

usurious loan.       **TOTAL (A-F):$** $400,000

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):       **TOTAL: $** _____

Signature of Attorney/Pro Se Plaintiff: X _____       Date:

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____       Date: 4/12/2019

| **CIVIL TRACKING ORDER**<br>**(STANDING ORDER 1- 88)** | DOCKET NUMBER<br><br>**1981CV01054** | **Trial Court of Massachusetts**<br>**The Superior Court**  |

CASE NAME:
Ramanjeet Kaur et al vs. World Business Lenders, Llc et al

Michael A. Sullivan, Clerk of Court
Middlesex County

TO: Rachel J Eisenhaure, Esq.
White and Williams LLP
101 Arch St
Suite 1930
Boston, MA 02110-1103

RECEIVED
APR 18 2019
By_____

COURT NAME & ADDRESS
Middlesex County Superior Court - Woburn
200 Trade Center
Woburn, MA 01801

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

COPY

| STAGES OF LITIGATION | | DEADLINE | |
| --- | --- | --- | --- |
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 07/11/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 08/12/2019 | |
| All motions under MRCP 12, 19, and 20 | 08/10/2019 | 09/09/2019 | 10/09/2019 |
| All motions under MRCP 15 | 06/05/2020 | 07/06/2020 | 07/06/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 04/01/2021 | | |
| All motions under MRCP 56 | 05/03/2021 | 05/31/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 09/28/2021 |
| Case shall be resolved and judgment shall issue by | | | 04/11/2022 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br><br>**04/16/2019** | ASSISTANT CLERK<br><br>**Maria Pantos** | PHONE |

Date/Time Printed: 04-16-2019 09:15:40

SCV026\ 08/2018