## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAMANJEET KAUR, KULWINDER SINGH UPPAL, and NEW ENGLAND DISTRIBUTORS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WORLD BUSINESS LENDERS, LLC, WBL SPO I, LLC, AXOS BANK, and ATLANTIS CAPITAL, LLC, <br><br> Defendants. | CIVIL ACTION NO. 1:19-cv-11364-WGY |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## BY WORLD BUSINESS LENDERS, LLC, WBL SPO I, LLC, AND AXOS BANK

Plaintiffs' Complaint does not assert any cognizable claims against Defendants World Business Lenders, LLC ("WBL"), WBL SPO I, LLC ("WBL SPO"), and Axos Bank, formerly known as BofI Federal Bank ("BofI") (collectively, "Defendants").  Plaintiffs acknowledge that Axos Bank, as a federally chartered savings bank, is not subject to Massachusetts usury laws.  Plaintiffs also acknowledge that WBL filed a notification with the Attorney General, which notification exempts an entity from Massachusetts usury laws.  Despite these acknowledgements, Plaintiffs would have this Court ignore well-settled banking law in order to avoid repayment on a business loan.  The fact remains, however, that Plaintiffs have no viable claim here.

# BACKGROUND[1]

### I.  Plaintiffs' Allegations

Ramanjeet Kaur ("Kaur") and Kulwinder Singh Uppal ("Uppal") are a married couple. Complaint, ¶ 6.  In early 2018, Uppal sought additional capital to grow his business, New England Distributors, Inc. ("Distributors").  Id. at ¶¶ 7; 22.  In pursuit of this capital, he and Uppal corresponded with Atlantis Capital, LLC, a broker that introduced them to WBL.[2]  Id. at ¶¶ 23; 29.

After being introduced to WBL, Kaur and Uppal continued to pursue a loan.  During this process, WBL required six months of Distributors' bank statements and a video interview.  Id. at ¶ 30.  WBL provided Kaur and Uppal with loan paperwork, including a Business Loan Application that contained the letterhead of WBL and of BofI—the previous name of Axos Bank.  Id. at ¶ 34.  That Business Loan Application stated: "Depending on various factors, loans will be made by either World Business Lenders ('WBL') or BofI Federal Bank ('BofI'), Member FDIC."  Id. at ¶ 37.

On March 13, 2018, Kaur and Uppal submitted the Business Loan Application, and Kaur also signed and submitted a Conditional Closing Agreement on behalf of Distributors.  Id. at ¶ 39.  On March 14, 2018, Plaintiffs received a Business Loan Summary, which specified that the lender for this transaction (the "Loan") was BofI Federal Bank, as confirmed in the Loan Agreement.  Id. at ¶ 41.

---

[1] Because this is a motion to dismiss, the background is drawn entirely from the Plaintiffs' Complaint, which Defendants dispute.  Defendants' references to the Complaint and its allegations are not admissions, and Defendants reserve all rights to contest the allegations taken here as true, for purposes of this motion.

[2] The docket does not indicate that Atlantis Capital, LLC has been served.

The total disbursement to Plaintiffs' company under the Loan was $172,237.50. Id. at ¶ 115. On March 16, 2018, Distributors received an electronic deposit for this full amount. Id. at ¶ 51. The deposit description included the phrase: "CCD DEPOSIT, BOFI FEDERAL BAN EPAY0001." Id. at ¶ 52. Subsequently, electronic withdrawals were made from Distributors' bank account to meet Distributors' payment obligations under the Loan. The first electronic withdrawal, which was made on March 19, 2018, had a description that included the phrase: "CCD DEBIT, BOFI AUTOPAY." Id. at ¶ 55.

BofI, n/k/a Axos Bank, is a federally chartered savings bank, not subject to Massachusetts usury laws. Id. at ¶ 4. Plaintiffs recognize as much in leaving Axos out of Count IV which alleges usury against WBL. For its part, on August 15, 2017, WBL notified the Massachusetts Attorney General of its intention to engage in transactions otherwise prohibited by state usury laws. Id. at ¶¶ 92-93. Under state law, this notification renders state usury laws inapplicable to such transactions for a two year period.

**II.     Claims Asserted in the Complaint.**

Plaintiffs assert six counts in their Complaint. These are: Injunctive Relief (Count I, against WBL and WBO SPL I, LLC); Chapter 93A: Doomed to Fail (Count II, against WBL); Chapter 93A: Rent-a-Bank (Count III, against WBL); Usury (Count IV, against WBL); Aiding Usury (Count V, against Axos and Atlantis Capital, LLC); and Chapter 93A: Usury (Count VI, against WBL, Axos, and Atlantis Capital, LLC).

**ARGUMENT**

Plaintiffs could not possibly assert a usury claim against their lender, Axos Bank, which is a federally chartered savings bank not subject to Massachusetts usury laws. Plaintiffs recognize this. Instead of accepting that the loan they pursued was valid, they argue that they

can disregard the contractual documents and treat WBL as the lender—which it plainly was not. This argument is not the basis for a legitimate cause of action in Massachusetts. However, even if this Court entertained the theory, Plaintiffs would still not have a viable cause of action. That is because WBL filed a notice with the Massachusetts Attorney General, and therefore any lending transaction between WBL and Plaintiffs would have been exempted from state usury laws.

I.   **Plaintiffs Acknowledge that Axos, the Lender, Is Not Subject to Massachusetts Usury Laws.**

Axos is a federally chartered savings and loan association, established under the Home Owners' Loan Act of 1933 ("HOLA"),[3] which "preempts state usury laws[.]" Yeomalakis v. FDIC, 562 F.3d 56, 59 (1st Cir. 2009). The Supreme Court has explained:

> The HOLA, a product of the Great Depression of the 1930's, was intended "to provide emergency relief with respect to home mortgage indebtedness" at a time when as many as half of all home loans in the country were in default. . . . Local institutions that had previously supplied funds to finance homes had ceased doing business or had discontinued such long-term loans, so that more than half the counties in the country, containing almost one-fifth of the total population, were without home-financing institutions. . . . The Act provided for the creation of a system of federal savings and loan associations, which would be regulated by the Board so as to ensure their vitality as "permanent associations to promote the thrift of the people in a cooperative manner, to finance their homes and the homes of their neighbors." . . . Congress plainly envisioned that federal savings and loans would be governed by what the Board — not any particular State — deemed to be the "best practices."

Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 159-61 (1982) (internal citations omitted).

---

[3] See Complaint, ¶ 11 (acknowledging that Axos "is an FDIC insured institution[.]"). Axos' status as a federally chartered savings bank is a matter of public record, reflected in various public filings including those by its holding company filed with the Securities and Exchange Commission.

The HOLA, as amended, preempts state law to the same extent that the National Bank Act. 12 U.S.C. 1465(b); discussed in, *e.g.*, Cole v. Stephen Einstein & Assocs., P.C., 365 F. Supp. 3d 319, 332 (W.D.N.Y. 2019). The preemption rule is clear: "there is, in short, no such thing as a state-law claim of usury against a national bank." Ben. Nat'l Bank v. Anderson, 539 U.S. 1, 11 (2003); see also 12 U.S.C. § 1463(g); 12 C.F.R. § 7.4008(d)(1). Massachusetts usury claims therefore cannot be asserted against Axos.

The Plaintiffs concede the issue. Even though Plaintiffs acknowledge that the transaction documents identify BofI (currently known as Axos) as the lender, Plaintiffs have not brought a single usury allegation against Axos. Because Axos is the lender, and because Plaintiffs cannot sue Axos for usury, Plaintiffs have no path to relief.

**II.     Plaintiffs Wrongly Argue that WBL Was the Lender.**

In an effort to circumvent this fatal problem, Plaintiffs assert a legal theory that neither Massachusetts nor this Circuit has recognized. Plaintiffs ask this Court to disregard the parties' contract and treat WBL as the lender instead. Complaint, ¶¶ 42. This is not a recognized legal theory in Massachusetts or in the First Circuit. Even if it were, Plaintiffs' allegations would fail. Plaintiffs therefore cannot sustain their theories of Injunctive Relief (Count I), Rent-a-Bank (Count III), Usury (Count IV and Count VI), and Aiding Usury (Count V), all of which depend upon disregarding the parties' relationship and contract, and instead treating WBL as the lender.

**A.     This Is Not a Viable Legal Theory.**

Defendants are not aware of any Massachusetts or First Circuit cases in which, despite transactional documents that state otherwise, a court deemed another entity to be the "true lender." Indeed, a number of courts in other jurisdictions have firmly ruled against such a theory and follow a "valid when made" approach. The Eighth Circuit has held that, even when a store

had purchased a bank's receivables, "it makes sense to look to the originating entity (the bank), and not the ongoing assignee (the store), in determining whether the NBA [National Bank Act] applies." Krispin v. May Dep't Stores Co., 218 F.3d 919, 924 (8th Cir. 2000) (removal proper because of the complete preemption doctrine). Likewise, where Axos indisputably funded the loan, it is the relevant entity for federal law purposes. In Sawyer v. Bill Me Later, Inc., the court held that even if "a lending program of a non-bank [was] attempting to circumvent California's usury laws—the court would still be required to dismiss these claims as preempted[.]" 23 F. Supp. 3d 1359, 1367 (D. Utah 2014).

In another district court, a plaintiff sought to create an exception to federal preemption where national bank loans were allegedly made to evade state usury laws. The court rejected the argument, holding:

> The position has some superficial appeal, but the court rejects it. Hudson invites the courts to draw boundaries between federal and state bank regulation depending upon the subjective purpose of those engaged in the transaction and/or the precise extent of financial risk accepted by the national bank. The court sees no basis for drawing jurisdictional boundaries in such an uncertain and unpredictable way, at least as a matter of statutory construction[.]

Hudson v. ACE Cash Express, Inc., No. IP 01-1336-C HIS, 2002 U.S. Dist. LEXIS 11226, at *16 (S.D. Ind. May 30, 2002).

Addressing a similar issue under state law, a third district court reached the same conclusion. The California Constitution contained a usury exception for loans by banks, and the plaintiffs acknowledged that a bank had issued their loans. Beechum v. Navient Sols., Inc., No. EDCV 15-8239-JGB-KKx, 2016 U.S. Dist. LEXIS 129782, at *17-18 (C.D. Cal. Sep. 20, 2016). Plaintiffs argued that "their 'lender' was effectively" another party. Id. at *18. Despite Plaintiffs' urging to disregard the loan issuer and look at other "substance" over "form," the Court explained that an inquiry into the substance of a transaction does not apply "when

6

assessing whether the transaction or a party to the transaction fall under a constitutional or statutory exemption from the usury prohibition." Id. The Court granted the motion to dismiss. Plaintiffs' Complaint, which seeks to circumvent an unambiguous federal statute, fails.

**B.      Plaintiffs Failed to Allege Facts Showing that Axos Was Not the Lender.**

Plaintiffs provide no real basis for their assertion that WBL is the true lender. Plaintiffs acknowledge that the Business Loan Summary identifies BofI (n/k/a Axos) as the lender. Id. at ¶ 41. Crucially, Plaintiffs also allege that the loan funds were advanced by an electronic deposit that identified BofI as the payer. Id. at ¶ 52 (alleging that the description stated: "CCD DEPOSIT, BOFI FEDERAL BAN EPAY0001"). Plaintiffs further allege that the first electronic withdrawal included the description "CCD DEBIT, BOFI AUTOPAY." Id. at ¶ 55.[4]

On the handful of occasions when courts in other jurisdictions have entertained "true lender" arguments, they reviewed the substance of the transaction at issue. See CashCall, Inc. v. Morrisey, No. 12-1274, 2014 W. Va. LEXIS 587, at *43 (May 30, 2014) (affirming lower court's application of the "predominant economic interest" test). Yet Plaintiffs make almost no allegations about the substance of the relevant transaction, and none of their specific factual allegations, if established, would prove that WBL was the true lender. Even if Plaintiffs' legal theory were theoretically viable, their Complaint would not be. See Buffalo-Water 1, LLC v. Fid. Real Estate Co., LLC, 481 Mass. 13, 17 (2018) ("The allegations must be more than 'mere labels and conclusions,' and must 'raise a right to relief above the speculative level.'").

Here, Plaintiffs base their argument almost entirely on their assertion that this loan, which WBL sourced and serviced on behalf of Axos, included paperwork that has similarities to the

---

[4] Plaintiffs note that subsequent withdrawals included different descriptions, but that does not diminish Axos's role as the lender.

documents that WBL has used when working with other banks. Plaintiffs rely on this argument so heavily that they dedicate more than *thirty* paragraphs to the issue. Id. at ¶¶ 94-127. Yet none of these forms contain any evidence contrary to the reality of the transaction: Axos loaned money to Plaintiffs. Rather, the documents show that Axos and WBL were entirely transparent about that fact: Axos (then known as BofI) was Plaintiffs' lender. BofI's logo was prominently displayed on all the paperwork. Id. at ¶¶ 99; 105; 115.

Moreover, the similarities in the cited paperwork are entirely unsurprising, largely reflecting routine questions and information. Both Business Loan Applications, for example, ask the applicant to provide the business's name and its contact information, as well as its owner's name and contact information. Compare id. at ¶ 98 and ¶ 99. Any lender would need this information. The Business Loan Authorization Agreements include other routine and necessary statements, such as: "Borrower agrees to notify Lender promptly if there are any changes to the Designated Checking Account, including routing numbers." Compare id. at ¶ 104 and ¶ 105. Plaintiffs cannot seriously suggest that Liberty Bank and Axos's requirement that borrowers provide notice of routing number changes constitutes evidence that WBL must have surreptitiously served as the true lender of both loans. Finally, the Business Loan Summaries includes basic loan information such as "Interest Charge" and "Total Repayment Amount"—and those figures are different on the two forms. Compare id. at ¶ 114 and ¶ 115. The fact that both lending banks identified the interest charge and the total repayment amount could not possibly establish that those banks were not the true lenders. Just as the Complaint has no basis in law, it also lacks any plausible basis in fact.

**III.     If WBL Were the Lender (Which It Clearly Is Not), the Loans Would Still Be Enforceable.**

Plaintiffs acknowledge: "On August 15, 2017, World Business Lenders, LLC sen[t] a 'Notification Pursuant to Mass. Gen. Laws ch. 271, sec. 49(d)' to the Commonwealth of Massachusetts Attorney General's Office.  In that notification, World Business Lenders notified the Attorney General of 'its intent to engage in transactions which, but for the provisions of Mass. Gen. Laws ch. 271, sec. 49(d) would be proscribed under the provisions of Mass. Gen. Laws ch. 271, sec. 49(a)." Complaint, ¶¶ 92-93.[5]  The notification itself is attached as Exhibit A to this memorandum.[6]

This admission dooms the Complaint.  Mass. Gen. Law 271, § 49(a) provides that Massachusetts usury law "shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or transactions which, but for the provisions of this paragraph, would be proscribed . . . providing any such person maintains records of any such transaction.  Such notification shall be valid for a two year period and shall contain the person's name and accurate address."

The loan at issue was plainly made within two years of the notification.  On Plaintiffs' own allegations, even if WBL were the true lender, which it is not, the loan would not be usurious.  See Goldsmith v. LBM Fin., LLC, 11-42578-MSH, Adv. Proc. No. 11-4211, 2013

---

[5] This was not an admission that WBL was the true lender of the loan at issue in this case.  At times, WBL originates its own loans.

[6] This notification is in the public record and is referenced in the Complaint, so it may be introduced without converting this to a motion for summary judgment.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden . . . .  However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.").

Bankr. LEXIS 4811, at *43 (Bankr. D. Mass. Nov. 13, 2013) ("I have now determined that the loan is not usurious because of LBM's registration with the Attorney General's office.").

Plaintiffs do not allege (nor could they) that WBL failed to maintain records of the subject transaction. Instead, they try to circumvent the statute with an irrelevant argument that the loan documents bear BofI's name. Complaint, ¶¶ 168-70. This was appropriate and correct: BofI was the lender, and Plaintiffs agree that they received their funds from BofI. Even crediting Plaintiffs' argument, however, the statute does not provide that inaccurate records would void the statute's applicability to a particular transaction. Moreover, the record keeping requirement does not even mention identification of the lender: "Such records shall contain the name and address of the ***borrower***, the amount borrowed, the interest and expenses to be paid by the borrower, the date the loan is made and the date or dates on which any payment is due." M.G.L. c. 271, § 49(d) (emphasis added). Plaintiffs have no basis to avoid basic statutory law.

There is no ambiguity here, but to the extent that there is any question, the usury statute "must be read narrowly, in light of its criminal penalties[.]" Baynorth Realty Fund VI, L.P. v. Shoaf, No. 09-4303-BLS2, 2010 Mass. Super. LEXIS 301, at *18 (Oct. 19, 2010). Any ambiguity therefore inures to WBL's benefit.

**IV.    Plaintiffs' Attempt to Find a Non-Usury Legal Theory Fails.**

In light of the fatal flaws with Plaintiffs' usury argument, they have unsurprisingly attempted to find a different avenue toward undoing the loan they sought out only last year. Their "doomed to fail" count does not salvage the Complaint.

Although there may be liability when a lender knowingly provides a loan that is "doomed to fail," Plaintiffs have not alleged that either WBL or Axos knew that the Plaintiffs would default on the loan. This is an unusual legal theory, and Plaintiffs' allegations do not bring their

10

claims within it.  In Conley v. Sovereign Bank, for example, an allegation that a loan was "doomed to fail" was allowed to proceed where there were detailed allegations that the plaintiff's loan application, on its face, showed that her income was too low to meet the required loan payments.  No. 13-P-196, 2015 Mass. App. Unpub. LEXIS 358, at *3 (May 4, 2015).  No such allegations are made here.  Plaintiffs do not even allege that the loan at issue was doomed to fail, or that they lacked the ability to pay the loan at the time that they accepted it.  See, e.g., Complaint, ¶¶ 140-155 ("Doomed to Fail" count, lacking any such allegation, and instead merely bringing general allegations regarding WBL's general underwriting practices).  Plaintiffs certainly do not allege that WBL or Axos had any information alerting them to Plaintiffs' inability to pay—if, indeed, Plaintiffs ever were unable.

## CONCLUSION

For these reasons, Defendants WBL, WBL SPO I, LLC, and Axos Bank respectfully as this Court to dismiss all of Plaintiffs' claims in this action with prejudice and to award such other and further relief as this Court finds just.

WORLD BUSINESS LENDERS, LLC, WBL SPO I, LLC, and AXOS BANK

By their attorneys,

*/s/* Patrick P. Dinardo
Patrick P. Dinardo (BBO No. 125250)
pdinardo@sandw.com
Erika L. Todd (BBO No. 689053)
etodd@sandw.com
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
August 16, 2019                           (617) 338-2880 (fax)

12

## CERTIFICATE OF SERVICE

I, Erika L. Todd, certify that on August 16, 2019, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any indicated as non-registered participants.

    /s/ Erika L. Todd